# 24-1941-cv(L), 24-2455-cv(CON)

# United States Court of Appeals

*for the*

## Second Circuit

———◆———

AJAY BAHL,

*Plaintiff-Appellant,*

— v. —

NEW YORK INSTITUTE OF TECHNOLOGY,

*Defendant-Appellee,*

NATIONAL BOARD OF OSTEOPATHIC MEDICAL EXAMINERS, ("NBOME"), NORTH SHORE LONG ISLAND JEWISH PLAINVIEW HOSPITAL, ("NS-LIJ"), PLAINVIEW HOSPITAL,

*Defendants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

DOUGLAS P. CATALANO
STEFANIE R. TOREN
CLIFTON BUDD & DEMARIA, LLP
*Attorneys for Defendant-Appellee*
The Empire State Building
350 Fifth Avenue, 61st Floor
New York, New York 10118
(212) 687-7410

CP COUNSEL PRESS    (800) 4-APPEAL • (335498)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, defendant-appellee New York Institute of Technology certifies that it is a private nonprofit institution of higher education, chartered by the New York State Board of Regents as a New York not-for-profit educational corporation, and that no portion of its ownership is publicly held.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iv

COUNTERSTATEMENT OF ISSUES ................................................... 1

STATEMENT OF THE CASE ................................................................ 2

I.  STATEMENT OF FACTS ................................................................ 2

        A.    BACKGROUND CONCERNING NYITCOM'S DO PROGRAM ................................................................... 2

        B.    PLAINTIFF COMMENCES HIS STUDIES AT NYITCOM ................................................................... 3

        C.    PLAINTIFF'S COMLEX 1 LEAVE .......................................... 4

        D.    PLAINTIFF'S CLERKSHIP AT PLAINVIEW HOSPITAL ................................................................... 4

               1.    The Hospital's Complaints About Plaintiff ..................... 4

               2.    Plaintiff Voluntarily Withdraws For Medical Reasons ................................................................... 5

               3.    Plaintiff Commenced Treatment with Yellin ................... 6

               4.    Plaintiff Completes His Clerkships ................................. 7

        E.    PLAINTIFF FAILS TO PASS THE COMLEX 2 EXAMS ................................................................... 7

               1.    Plaintiff Fails to Pass the COMLEX 2 Exams Prior to His Graduation Date ................................................. 7

               2.    Plaintiff's COMLEX 2 Leave ........................................ 8

               3.    NBOME Denies Plaintiff's COMLEX 2 Testing Accommodations ................................................................... 8

               4.    NYITCOM Permits Plaintiff to Take a Directed Study Course ................................................................... 11

               5.    Plaintiff's Own Actions Contributed to His Inability to Pass the COMLEX 2 Exams ..................... 13

               6.    Plaintiff Fails to Pass the COMLEX 2 Exams Before the End of the Course ......................................... 15

7. NYITCOM Offers Plaintiff Accommodations ...............18

II. PROCEDURAL HISTORY .................................................................24

SUMMARY OF NYIT'S ARGUMENT .................................................26

POINT I THE DISTRICT COURT PROPERLY DENIED PLAINTIFF'S
MOTION FOR JUDGMENT AS A MATTER OF LAW AS THERE IS
SUFFICIENT EVIDENCE IN THE RECORD TO SUPPORT THE JURY'S
VERDICT THAT NYIT DID NOT FAIL TO PROVIDE PLAINTIFF A
REASONABLE ACCOMMODATION .................................................28

   A. STANDARD OF REVIEW .....................................................28

   B. THE EVIDENCE IN THE RECORD SUPPORTS THE
      JURY'S VERDICT THAT NYIT DID NOT FAIL TO
      PROVIDE PLAINTIFF A REASONABLE
      ACCOMMODATION.................................................29

      1. NYITCOM Offered Plaintiff a Plainly Reasonable
         Accommodation.............................................31

         a. NYITCOM Granted Plaintiff's Accommodation
            Request .................................................32

         b. The District Court Correctly Held That The
            Question of Reasonable Accommodation Was
            Properly Before the Jury .....................................35

         c. NYITCOM's Accommodation Was Not
            "Unworkable".......................................38

      2. The Jury Could Have Reasonably Found That
         Plaintiff Was Responsible for the Breakdown in
         the Interactive Process Concerning Plaintiff's
         Accommodation Request...............................39

      3. Plaintiff's Proposed Accommodation Was
         Unreasonable ................................................43

         a. Plaintiff's Proposed Accommodation Was Not
            Reasonable.........................................43

         b. The Jury Could Have Reasonably Concluded That
            Plaintiff's Requested Accommodation Could Have
            Required a Fundamental or Substantial
            Modification to the Nature of NYITCOM's
            Academic Program or Standards..........................44

POINT II  PLAINTIFF IS NOT ENTITLED TO A NEW TRIAL AS THE
DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ITS
EVIDENTIARY AND OTHER RULINGS AS AGAINST PLAINTIFF ...............46

    A.    STANDARD OF REVIEW ......................................................46

    B.    THE DISTRICT COURT DID NOT ABUSE ITS
        DISCRETION IN ADMITTING EVIDENCE OF
        PLAINTIFF'S MARIJUANA USE ..........................................47

    C.    THE DISTRICT COURT DID NOT ABUSE ITS
        DISCRETION IN PRECLUDING TWO FORMER
        NYITCOM STUDENTS FROM TESTIFYING
        CONCERNING THEIR EXPERIENCES AT NYITCOM ......50

    D.    THE DISTRICT COURT DID NOT IMPROPERLY
        DENY THE JURY AN OPPORTUNITY TO REVIEW
        NON-RESPONSIVE EVIDENCE DURING ITS
        DELIBERATIONS ................................................................53

POINT III  PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF ...........56

CONCLUSION ....................................................................................................58

Page(s)

**CASES**

Ali v. Kipp,
  891 F.3d 59 (2d Cir. 2018) ...................................................................46

Amato v. City of Saratoga Springs, N.Y.,
  170 F.3d 311 (2d Cir. 1999) .................................................................46

Atkins v. New York City,
  143 F.3d 100 (2d Cir. 1998) .................................................................46

Bahl v. N.Y. Coll. Of Osteopathic, Med.,
  14-cv-4020-NRM, 2024 WL 866137 (E.D.N.Y. February 28, 2024)..... 25, 36, 37

Becker v. ARCO Chem. Co,
  207 F.3d 176 (3d Cir. 2000) ............................................................ 50, 52

Brief v. Albert Einstein Coll. of,
  Med., 423 F. App'x 88 (2d Cir. 2011) ............................................ 31, 32, 43

Brooklyn Ctr. For Psychotherapy, Inc. v. Phila. Indem. Ins.,
  955 F.3d 305 (2d Cir. 2020) ............................................................ 50, 53

Cmty. Coll. v. Davis,
  442 U.S. 397 (1979) ...........................................................................44

Conte v. Emmons,
  895 F.3d 168 (2d Cir. 2018) .................................................................29

Conway v. Village of Mount Kisco,
  750 F.2d. 205 (2d Cir. 1984) ...............................................................57

Cross v. N.Y.C. Transit Auth.,
  417 F.3d 241 (2d Cir. 2005) .................................................................29

Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.,
  804 F.3d 178 (2d Cir. 2015) .......................................................... passim

Delson v. Mineta,
  144 Fed. Appx. 136 (2d Cir. 2005) .......................................................43

Diesel v. Town of Lewisboro,
  232 F.3d 92 (2d Cir. 2000) ..................................................................28

Doe v. Pfrommer,
  148 F.3d 73 (2d Cir. 1998) ..................................................................31

Elliott v. City of Hartford,
  823 F.3d 170 (2d Cir. 2016) ............................................................ 56, 57

Estes v. Dick Smith Ford, Inc.,
  856 F.2d 1097 (8th Cir. 1988) .............................................................50

*Fletcher v. City of New York,*
54 F.Supp.2d 328 (S.D.N.Y.,1999) ................................................................ 47, 48

*Frilando v. New York City Transit Auth.,*
463 F. Supp. 3d 501 (S.D.N.Y. 2020) .......................................................................31

*Gati v. Western Kentucky University,*
762 Fed.Appx. 246 (6th Cir. 2019) ..........................................................................42

*George Basch Co. v. Blue Coral, Inc.,*
968 F.2d 1532 (2d Cir. 1992) ....................................................................................29

*Halpern v. Wake Forest Univ. Health Scis.,*
669 F.3d 454 (4th Cir. 2012) ....................................................................................43

*Henrietta D. v. Bloomberg,*
331 F.3d 261 (2d Cir. 2003) ....................................................................................31

*Jackan v. N.Y.S. Dep't of Labor,*
205 F.3d 562 (2d Cir. 2000) ....................................................................................39

*LeBlanc–Sternberg v. Fletcher,*
67 F.3d 412 (2d Cir.1995) ................................................................................ 28, 29

*Lewis v. District of Columbia,*
793 F.2d 361 (D.C.Cir.1986) ............................................................................ 47, 48

*Lindsay v. Macias,*
907 F.3d 517 (2d Cir. 2018) ....................................................................................54

*Malek v. Feigenbaum,*
116 F.4th 118 (2d Cir. 2024) ............................................................................ 56, 57

*Mattivi v. South African Marine Corp., "Huguenot",*
618 F.2d 163 (2d Cir.1980) ....................................................................................29

*McElwee v. Cnty. of Orange,*
700 F.3d 635 (2d Cir. 2012) ....................................................................................31

*McGregor v. Louisiana State Univ. Bd. of Sup'rs,*
3 F.3d 850 (5th Cir. 1993) ....................................................................................44

*New Phone Co., Inc. v. City of New York,*
498 F.3d 127 (2d Cir. 2007) ....................................................................................57

*Noel v. BNY-Mellon Corp.,*
2011 WL 4633884 (S.D.N.Y. October 4, 2011) ...................................................40

*Noll v. Int'l Bus. Machines Corp.,*
787 F.3d 89 (2d Cir. 2015) ....................................................................................32

*Nugent v. St. Lukes Roosevelt Hosp Ctr.,*
303 Fed. Appx. 943 (2d Cir. 2008) .................................................................. 40, 43

*Pahlavan v. Drexel Univ. Coll. of,*
*Med.*, 438 F. Supp. 3d 404 (E.D. Pa. 2020) .......................................................43

*Parker v. Sony Pictures Ent., Inc.,*
260 F.3d 100 (2d Cir. 2001) ....................................................................................40

*Qorrolli v. Metro. Dental Associates*,
   124 F.4th 115 (2d Cir. 2024) ........................................................ 45, 46
*Raedle v. Credit Agricole Indosuez*,
   670 F.3d 411 (2d Cir. 2012) ..........................................................46
*Simblest v. Maynard*,
   427 F.2d 1 (2d Cir.1970) ..........................................................28
*Sivio v. Village Care Max*,
   426 F.Supp.3d 778 (S.D.N.Y. 2020) ........................................40
*Smith v. Lightning Bolt Prods., Inc.*,
   861 F.2d 363 (2d Cir.1988) ........................................................28
*Tafolla v. Cty. of Suffolk*,
   No. 17-cv-4897(JS)(AKT), 2021 WL 3675042 (E.D.N.Y. Aug. 19, 2021)........40
*Taylor v. Gilbert & Bennett*,
   1997 WL 30948 (N.D.Ill.1997)........................................................51
*United States v. Landau*,
   155 F.3d 93 (2d Cir.1998) ..........................................................46
*Valley Juice Ltd. v. Evian Waters of France, Inc.*,
   87 F.3d 604 (2d Cir.1996) ..........................................................28
*Wright v. New York State Dep't of Corr.*,
   831 F.3d 64 (2d Cir. 2016) ..........................................................44
*Zito v. Donahoe*,
   915 F. Supp. 2d 440 (S.D.N.Y. 2012) ......................................40

**STATUTES**

29 U.S.C. § 701 ............................................................................24
29 U.S.C. § 794 ........................................................................ 1, 30
42 U.S.C. § 12101 ......................................................................24
N.Y. Exec. Law § 290 ..................................................................1
N.Y. Exec. Law §§ 296(2)(a) ......................................................30
N.Y. Exec. Law §§ 296(2)(b) ......................................................30

**RULES**

Fed. R. Civ. P. 50........................................................ 25, 26, 28, 29
Fed. R. Civ. P. 59 ......................................................................25
FRE 403 ....................................................................................48
FRE 404(b)................................................................ 47, 52, 53

**REGULATIONS**

29 C.F.R. § 1630.2(o)(3) ................................................................40

## <u>COUNTERSTATEMENT OF ISSUES</u>

1.     Where plaintiff-appellant Ajay Bahl ("Plaintiff"), a former student of defendant-appellee New York Institute of Technology ("NYIT"), asserted claims for failure to accommodate his alleged disabilities pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C § 794 *et seq*. ("Rehab Act") and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*. ("NYSHRL"), and where after a trial concerning Plaintiff's claims a jury issued a verdict in favor of NYIT, did the District Court properly deny Plaintiff's motion seeking judgment as a matter of law on the alleged ground that the District Court erred by permitting the jury to decide whether NYIT offered Plaintiff a reasonable accommodation?

NYIT respectfully submits that the question should be answered in the affirmative.

2.     Did the District Court properly deny Plaintiff's motion for a new trial on the grounds that: (1) the District Court improperly permitted the jury to hear evidence of Plaintiff's marijuana usage during the time when Plaintiff was supposed to be studying for his licensing examinations; (2) the District Court improperly precluded two former NYIT students from testifying as to their own experiences; and (3) the District Court improperly precluded the jury from reviewing an exhibit that was non-responsive to the jury's question posed to the District Court?

NYIT respectfully submits that the question should be answered in the affirmative.

3.    Does the Court have jurisdiction to review Plaintiff's request for injunctive relief and, if so, is Plaintiff entitled to injunctive relief?

NYIT respectfully submits that the questions should be answered in the negative.

## STATEMENT OF THE CASE

## I.    STATEMENT OF FACTS

### A.    BACKGROUND CONCERNING NYITCOM'S DO PROGRAM

NYITCOM is a medical college within NYIT. (JA-617). NYITCOM's Doctor of Osteopathic Medicine ("D.O.") program is a 4-year program for medical students. (JA-331-332). During the first two years of the program students mostly participate in coursework and, during the third and fourth years of the program students participate in clinical clerkships. (JA-331-332, 619-620).

The Commission on Osteopathic College Accreditation ("COCA") is the independent accrediting agency for osteopathic medical schools and sets forth certain requirements for the grant of D.O. degrees to medical students. (JA-269, 332, 619-620). For example, all NYITCOM students are required to pass the COMLEX-USA Level 1 examination ("COMLEX 1 Exam"), usually taken before they commence their third-year clinical clerkships. (JA-315, 619-620, 622, 672, 687). After successful completion of the COMLEX 1

Exam, students are required to pass the Level 2 CE ("CE Exam") and Level 2 PE[1] examinations ("PE Exam" and collectively with the CE Exam, "COMLEX 2 Exams") in order to graduate from medical school. (JA-332, 619-623, 687). Failure to timely pass the COMLEX 1 and 2 Exams can result in dismissal from NYITCOM without the possibility of reinstatement. (JA-623).

The National Board of Osteopathic Medical Examiners ("NBOME"), another independent agency, produces and oversees the administration of the COMLEX examinations. (JA-343-344, 624, 672, 687). NBOME and NYIT are unrelated entities and, as such, NYIT does not have any involvement in the COMLEX examination process. (JA-687).

### B.     PLAINTIFF COMMENCES HIS STUDIES AT NYITCOM

Plaintiff commenced his studies at NYITCOM in 2008. (JA-314, 671-672). Until September 2013, discussed *infra*, Plaintiff never requested an accommodation from NYITCOM due to any medical condition. (JA-329, 374-375, 432, 509, 1486-1487). Plaintiff did not receive any formal accommodations in high school, college at New York University, or graduate school at University of Pennsylvania. (JA-308-309, 312-313, 374-375, 432, 1486-1487). Plaintiff also passed the SAT and MCAT examinations without accommodations. (JA-313-314, 377, 379-380, 1486-1487).

---

[1]     The PE Exam requirement has been suspended. (JA-622-623).

### C.   PLAINTIFF'S COMLEX 1 LEAVE

After successful completion of his first and second years at NYITCOM, Plaintiff took the COMLEX 1 Exam on June 22, 2010 without any accommodations, and failed the examination. (JA-315-316, 672). Thereafter, he met with Felicia Bruno ("Bruno"), Assistant Dean of Student Services and Alumni Affairs at NYITCOM, to discuss taking a 180-day COMLEX 1 leave of absence ("COMLEX 1 Leave"). (JA-316, 506-507, 672, 1068, 1485).

Plaintiff was approved to commence his COMLEX 1 Leave on or about August 2, 2010. (JA-317, 534-535, 1068). In furtherance of their meeting Plaintiff wrote to Bruno on August 9, 2010 and asked for information about requesting a testing accommodation for extra time from NBOME in the event he decided to make such a request for the COMLEX 1 Exam. (JA-376, 674, 1468). In response, Bruno referred Plaintiff to Cheryl Newman ("Newman"), NYITCOM's learning specialist. (JA-1468). Plaintiff took the COMLEX 1 Exam in October 2010 and passed without any accommodations from NYITCOM or NBOME. (JA-316-317, 330, 534-535, 672-674, 1468).

### D.   PLAINTIFF'S CLERKSHIP AT PLAINVIEW HOSPITAL

#### 1.   The Hospital's Complaints About Plaintiff

Plaintiff commenced his third-year clinical clerkships and successfully completed two clerkships without any accommodations. (JA-318). Thereafter, Plaintiff commenced his surgery clinical clerkship at Plainview Hospital (the "Hospital") on or about May 25, 2011. (JA-509). Plaintiff never requested any accommodations from the Hospital or NYITCOM during his clerkship. (JA-509, 521-523).

On June 8, 2011, the Hospital reported concerns about Plaintiff, including his lateness, inappropriate attire, unexcused absences and improper completion of logs. (JA-674-681, 1491-1493). On June 29, 2011, the Hospital reported to NYITCOM that Plaintiff was inappropriately dressed in the operating room and initially ignored the Hospital's requests to change. (JA-679-681, 1493). It was also reported to NYITCOM that Plaintiff was considered a patient safety risk as he was too close to the sterile field without being scrubbed and was argumentative toward staff. (JA-679-681, 1493).

### 2. Plaintiff Voluntarily Withdraws For Medical Reasons

Dr. Abraham Jeger ("Jeger"), NYITCOM's former Associate Dean for Clinical Education, contacted Mary Ann Achtziger ("Achtziger"), NYITCOM's former Associate Dean of Student Affairs, and informed her of the Hospital's complaints about Plaintiff as a possible violation of the student code of professionalism. (JA-264). Bruno was also informed of the Hospital's complaints. (JA-674-675, 682-683, 1491-1493).

A meeting was held in July 2011 with Plaintiff, Bruno, Achtziger and Jeger to discuss the Hospital's complaints, during which Plaintiff informed NYITCOM that he would not be returning to his clerkship at the Hospital and that he chose to withdraw from NYITCOM for medical reasons[2]. (JA-264, 322, 682-683). No disciplinary action concerning the Hospital's complaint was taken based upon Plaintiff's request. (JA-264, 683-684). While Plaintiff

---

[2]  Plaintiff was not eligible for a medical leave of absence under NYITCOM's policy as Plaintiff had already taken a COMLEX 1 Leave during that year. (JA-270, 535, 685).

contends that he was compelled to withdraw, it was solely within Plaintiff's discretion to withdraw for medical reasons, rather than to receive a possible failing grade in the clerkships and possible disciplinary action had NYITCOM found a violation of the student code of professionalism. (JA-264, 266, 270, 366, 683-684).

Plaintiff signed a withdrawal for medical reasons form on July 11, 2011. (JA-681-682, 1554-1555). NYITCOM explained to Plaintiff that, in accordance with NYITCOM's policy, he would need documentation from a physician to support Plaintiff's withdrawal for medical reasons, as well as clearance from a NYITCOM-approved physician in order to return to NYITCOM. (JA-265-266, 685, 1554-1555). Dr. Leonard Adler ("Adler"), Plaintiff's psychiatrist since March 2011 for monthly medication management visits, provided notes to Bruno to support Plaintiff's medical withdrawal, dated July 15 and 29, 2011, in which he confirmed Plaintiff's diagnosis of ADHD and generalized anxiety disorder. (JA-93, 99, 321, 1071-1072). Plaintiff also met with Dr. Sergei Belkin, the psychiatrist retained by NYITCOM, who confirmed Plaintiff's ability to return to his studies on September 1, 2011. (JA-265-266, 330, 335, 524, 686, 1558).

### 3.    Plaintiff Commenced Treatment with Yellin

On or about August 25, 2011, Plaintiff began treating with Dr. Paul Yellin ("Yellin"), a learning specialist. (JA-328-329, 1076). As part of Yellin's August 29, 2011 Comprehensive Neurodevelopment Assessment (the "Yellin Report") of Plaintiff, Yellin provided Plaintiff with a learning plan. (JA-1076-1107). In the Yellin Report Yellin expressed his opinion that

Plaintiff should receive extended time on all examinations and be provided with advance notice before being called on during his clerkship rounds. *Id*. Plaintiff did not provide the Yellin Report to NYITCOM in August 2011 or request from NYITCOM any accommodations proposed by Yellin. (JA-329).

### 4. Plaintiff Completes His Clerkships

Plaintiff returned from his medical withdrawal on or about September 6, 2011 and successfully completed his third and fourth-year clerkships without any accommodations from NYITCOM or his clerkships. (JA-330-332).

## E. PLAINTIFF FAILS TO PASS THE COMLEX 2 EXAMS

### 1. Plaintiff Fails to Pass the COMLEX 2 Exams Prior to His Graduation Date

As required by COCA, students are required to pass the COMLEX 2 Exams in order to graduate from NYITCOM. (JA-269, 332, 620). If they do not take and receive passing scores prior to their graduation date, students are eligible to apply for a 180-day COMLEX 2 leave of absence ("COMLEX 2 Leave") in lieu of dismissal during which they can study and retake the examinations. (JA-624, 690, 1607-1608).

Despite Plaintiff needing passing scores on his COMLEX 2 Exams by December 31, 2012 in order to graduate, Plaintiff registered for and then cancelled the COMLEX 2 Exams approximately 8 times prior to July 30, 2012. (JA-339, 495, 1560-1561). On July 31, 2012, Bruno wrote to Plaintiff as he had rescheduled the exam for January 24, 2013, after his graduation date. (JA-689-690, 1604-1605). Bruno reminded him that his scores must be

received prior to December 31, 2012 and urged him not to cancel any more exams. *Id.* On

December 7, 2012 Bruno met with Plaintiff as he had cancelled the COMLEX 2 Exams

approximately 4 additional times. (JA-690, 1560-1561, 1609). On December 12, 2012, Bruno

confirmed their conversation and instructed Plaintiff not to reschedule his December 10, 2012

PE Exam. (JA-690, 1609). Despite Bruno's instruction, Plaintiff cancelled the December 10

exam again, ultimately taking and failing both the CE Exam on December 17, 2012 and the

PE Exam on December 26, 2012. (JA-340-341, 478-479, 529, 1560-1561).

### 2. Plaintiff's COMLEX 2 Leave

As it was apparent that Plaintiff would not receive passing scores on the COMLEX 2

Exams by his graduation date, on December 3, 2012 Bruno wrote to Plaintiff concerning a

COMLEX 2 Leave. (JA-691, 1606). Otherwise, Plaintiff would have been dismissed. (JA-

692-693). Plaintiff applied for and was approved for a 180-day COMLEX 2 Leave effective

January 1, 2013. (JA-341-342, 526-527, 693, 1607-1608). The approval letter was clear that

Plaintiff needed to receive passing scores on the COMLEX 2 Exams by June 29, 2013 or he

would be dismissed from NYITCOM. *Id.*

### 3. NBOME Denies Plaintiff's COMLEX 2 Testing Accommodations

During Plaintiff's COMLEX 2 Leave he cancelled the PE Exam three more times before

taking and failing the PE Exam on April 19, 2013. (JA-342-343, 479, 1560-1561). Plaintiff

failed to request accommodations from NBOME until one month prior to the conclusion of

his COMLEX 2 Leave.[3] (JA-345). Prior to submitting his requests to NBOME, Plaintiff requested on or about May 3, 2013 that Bruno complete NYITCOM's portion of the CE Exam request form, which she did. (JA-693-698, 1623-1626). Plaintiff certified that the request form was accurate, including Bruno's representation that Plaintiff had not received any prior accommodations by NYITCOM. *Id.* Plaintiff submitted his first request to NBOME for a testing accommodation of extended time to take the CE Exam on or about May 28, 2013. (JA-346, 694, 1623-1626).

On May 14, 2013, Yellin wrote to Plaintiff and inquired as to whether Bruno would feel "comfortable" amending NYITCOM's portion of the CE Exam request form despite noting the accuracy of the response. (JA-167, 169-170, 1613-1618). On May 23, 2013, Plaintiff provided Bruno a copy of the Yellin Report for the first time and requested that Bruno amend her response to NBOME to indicate that "the school supports the request for accommodations based on reviewing the documentation." (JA-698-700, 1619-1622). Plaintiff and Bruno discussed Plaintiff's request and Bruno felt that she was not qualified to provide an opinion to NBOME as to the validity of Plaintiff's accommodation request, and noting that the request

---

[3]   Plaintiff could have sought testing accommodations for the COMLEX 2 Exams in 2011 when he received the Yellin Report. Plaintiff also informed Bruno that he was considering requesting testing accommodations in August 2010. Plaintiff says that he did not do so as he believed that there would be a stigma associated with any indication that he took the COMLEX 2 Exams under non-standard conditions. (JA-344, 1486-1487).

form only requests information about what accommodations Plaintiff received from NYITCOM. (JA-698-700, 1619-1626).

While Plaintiff's CE Exam request was pending, on or about June 28, 2013 Plaintiff requested a testing accommodation from NBOME for extended time to complete notes on the PE Exam. (JA-346, 700-702, 1631-1634). To support his request Plaintiff requested that Bruno complete NYITCOM's portion of the PE exam accommodation request form to include in his application to NBOME, which she completed on June 6, 2013. *Id.* Plaintiff certified that Bruno's responses were accurate as Plaintiff had not received any accommodations from NYITCOM. *Id.*

On July 12, 2013, NBOME denied Plaintiff's request for a testing accommodation for the CE Exam as Plaintiff's "documentation fails to indicate disabling impairment in any major life activities and in the specific types of academic and test taking activities required for accessing the [CE Exam].[4]" (JA-346, 1635-1636). Plaintiff notified Bruno of NBOME's decision and thanked Bruno for her assistance, even providing her with a gift card. (JA-537-539, 1637-1638). Plaintiff never sought reconsideration of NBOME's decision. (JA-431-432, 542-545).

On August 22 and 23, 2013 Plaintiff inquired as to the status of his PE Exam accommodation request. (JA-1641-1644). NBOME acknowledged that it had delayed its

---

[4] NYITCOM had no involvement with NBOME's decision to deny Plaintiff's accommodation requests. (JA-748).

processing of Plaintiff's request as the request had been mistaken for his CE Exam accommodation request. (JA-346-347, 1641-1644). Despite the delay, NBOME confirmed that it would be able to issue a determination before his September 5, 2013 PE Exam. (JA-1641-1644). Although Plaintiff communicated to NBOME that he wished to submit additional documentation, which he could have done after he received the denial in July 2013, he requested that NBOME proceed with its evaluation of his initial request without additional documentation. This would ensure a decision on his request before his September 5 examination, which was immediately prior to the end of his directed study course. (JA-551-552, 1641-1644).

On September 3, 2013, NBOME denied Plaintiff's request for a testing accommodation for the PE Exam for similar reasons specified in its July 12, 2013 denial of Plaintiff's request for a testing accommodation for the CE Exam. (JA-345-346, 1659). Plaintiff never sought reconsideration of NBOME's decision. (JA-473).

### 4.    NYITCOM Permits Plaintiff to Take a Directed Study Course

During Plaintiff's COMLEX 2 Leave NYITCOM changed its policy and students who did not pass the COMLEX 2 Exams by graduation would be placed in a 10-week directed study course (the "Course") with academic support from faculty to prepare for the COMLEX 2 Exams prior to being eligible to take a COMLEX 2 Leave. (JA-704-705). On June 5, 2013, NYITCOM notified Plaintiff in writing that although he did not pass the COMLEX 2 Exams by the end of his leave, NYITCOM was offering him the ability to enroll

in the Course. (JA-540, 703, 708, 1627-1628). This 10-week extension of time to pass the COMLEX 2 Exams was offered to Plaintiff as an accommodation as the new policy did not apply to him. (JA-267-268, 704). It was also offered in lieu of dismissing Plaintiff. (JA-703).

NYITCOM granted Plaintiff approval to enroll in the Course through September 9, 2013, with a requirement that he take and pass the COMLEX 2 Exams prior to that date. (JA-348-349, 500, 706-708, 1627-1630). NYITCOM and Bruno undisputedly wanted Plaintiff to pass the COMLEX 2 Exams and graduate. (JA-688, 709-711). In addition to providing Plaintiff with the academic support in the Course and additional time to take the COMLEX 2 Exams, in August 2013, Bruno assisted Plaintiff with getting into a third capstone course through the Institute of Clinical Confidence ("ICC"), a simulation lab that assists students with preparing for the PE Exam. (JA-540, 709, 1404). Bruno wrote to the Director of ICC and requested that Plaintiff be allowed to participate in another capstone course "immediately." (JA-709-711, 1639-1640). The Director was reluctant as Plaintiff had previously taken two capstone courses, but Bruno insisted that it was "urgent" as she wanted Plaintiff to pass the COMLEX 2 Exams. (JA-688, 709-711, 1639-1640). NYITCOM and Plaintiff recognized Bruno's efforts to assist him by thanking Bruno for "going out of [her] way to help in getting [Plaintiff] a date" for another capstone course, noting that Bruno was his "favorite dean." (JA-541, 1404).

Plaintiff cancelled the COMLEX 2 Exams a total of 20 times after he completed his clerkships. (JA-687, 1560-1561, 1682-1683). In Bruno's 21 years of working at NYIT she had

never seen a student cancel the COMLEX 2 Exams 20 times. (JA-670, 688, 722). Plaintiff continued to delay by failing to schedule the PE Exam until September 5, 2013 and the CE Exam until September 9, 2013, the last day of his Course. (JA-708-709, 1560-1561, 1682-1683). As Plaintiff would not have passing scores by September 9, 2013, he risked dismissal. (JA-349-350).

### 5. Plaintiff's Own Actions Contributed to His Inability to Pass the COMLEX 2 Exams

Plaintiff's medical records confirm that his own actions contributed to his inability to pass the COMLEX 2 Exams. Plaintiff smoked marijuana during medical school, as frequently as three times per week during his first 1.5 years at NYITCOM. (JA-445, 447, 453-454, 1482). In January 2012, when Plaintiff should have been preparing for the COMLEX 2 Exams, Plaintiff reported that he smoked marijuana weekly. (JA-1691-1700). Plaintiff admitted that it is not advisable for someone treating for ADHD and other impairments to smoke marijuana on a weekly basis. (JA-449-450). Adler agreed that if Plaintiff's marijuana use had been more than "intermittent," it could have impacted his diagnosis and treatment of Plaintiff. (JA-121-122). Yellin also agreed that Plaintiff's marijuana usage could contribute to his ADHD. (JA-167). In fact, Yellin testified that had he known that Plaintiff was smoking marijuana as frequently as three times per week, "[i]t would make me question whether or not he had ADHD as opposed to sequela of smoking a lot of pot." (JA-164-165). It would have also made Yellin question the other diagnoses that

he rendered concerning Plaintiff. (JA-165). Yellin testified that "if he told me he was smoking pot, it would have been something that was certainly relevant, and I would – I might even advise against assessing him because – or at least have him abstain for a period of time so I could be clear that the acute effects of marijuana were not affecting his performance level on the clinical assessment." (JA-166).

In January 2012, Plaintiff disclosed that one day per week he would have four alcoholic drinks. (JA-458-462, 1691-1700). Plaintiff also disclosed that in the three months prior to January 2012, he had 10 alcoholic drinks in one day. *Id*. Plaintiff did not believe that his marijuana use and alcohol consumption was beneficial for in January 2012 Plaintiff checked "yes" in response to the question "had you ever felt you ought to cut down on your drinking and drug use." (JA-466, 1691-1700).

During Plaintiff's studies at NYITCOM he treated with Dr. David Fazzari ("Fazzari") for weekly cognitive behavioral therapy. (JA-463, 492-493). Plaintiff provided multiple explanations for why he had difficulty studying for the COMLEX 2 Exams such as socializing, staying up late, and not taking his medication at the recommended times. For example, on February 12, 2012, Plaintiff disclosed that he had "difficulty studying over the weekend because of a bachelor party and family conflict." (JA-1739). On May 1, 2012 Plaintiff disclosed that he "had setbacks to his study schedule because of a car accident on Friday…and going out late at night with friends on Saturday." (JA-1738). On May 3, 2012 Plaintiff disclosed that he "had

not studied as much as intended because of other relatively time sensitive tasks."
(JA-1690). On May 31, 2012 Plaintiff disclosed that he "had trouble studying
consistently because of taking his medication inconsistently and socializing late at
night, which disrupted his sleep pattern." (JA-463-464, 1703). On May 29, 2013
Plaintiff disclosed that he diverted from his study plan as he "became preoccupied
with nonurgent tasks for approximately 5 hours." (JA-1733). On June 11, 2013
Plaintiff disclosed that he "stayed up later than anticipated last night, throwing off
his sleep schedule. He had gotten distracted by surfing the Internet in part because
he was not taking his evening medications." (JA-1713). On October 28, 2013
Plaintiff admitted that he had "not been forthcoming about his lack of medication
compliance" which contributed to "increased sleep problems and mood lability."
(JA-436-441, 1405). On May 1, 2014 Plaintiff disclosed that he "had difficulty
refraining from marijuana." (JA-1690).

> ### 6. Plaintiff Fails to Pass the COMLEX 2 Exams Before the End of the Course

In late August 2013, Plaintiff contacted Alyssa Provenzano ("Provenzano"), the
Assistant Director of Disability Services in NYIT's Office of Disability Services ("ODS").
(JA-273-274, 355, 1647-1658). ODS does not have oversight over NYITCOM students nor
is it authorized to provide medical leaves; rather, Provenzano assists non-medical NYIT
students who need certain medical accommodations for testing or in the classroom. (JA-282-
283, 288-292). Plaintiff was aware of this at the time he went to ODS. For example, Plaintiff

was on notice that Bruno was the NYITCOM administrator who oversaw medical and other leaves for NYITCOM students from the Student Handbook, his communications with Bruno and his prior experiences in requesting leaves and a withdrawal for medical reasons. (JA-712, 1485, 1559, 1606-1608). Plaintiff also was on notice through communications with Bruno that Newman, NYITCOM's learning specialist, is the Section 504 coordinator for NYITCOM students, and the contact for any accommodations. (JA-282-283, 288-289, 674, 1486-1487, 1509, 1511-1512).

Provenzano and Plaintiff met on August 30, 2013, during which Plaintiff provided her with the Yellin Report.[5] (JA-274, 276). Provenzano believed that Plaintiff was seeking ODS's assistance with obtaining testing accommodations from NBOME. (JA-274, 284-285, 288-293). On September 3 or 4, 2013, Provenzano spoke with Bruno about Plaintiff's request to obtain testing accommodations, who requested that Provenzano refer Plaintiff to Newman. (JA-278-280, 285-286). On September 5, 2013, Plaintiff emailed Provenzano who responded by recommending that Plaintiff contact Newman for assistance, which he never did. (JA286-287, 1661-1662).

On or about August 28, 2013, Plaintiff's former counsel, Stewart Karlin, Esq. ("Karlin"), wrote to ODS, not NYITCOM, "in connection with [Plaintiff's] request for a six month leave

---

[5] Plaintiff was Provenzano's first NYITCOM student to meet with her in ODS so she was not yet familiar with any services that ODS could offer NYITCOM students. (JA-282-284).

of absence to allow him to take the COMLEX examination in February 201[4] [sic]…" . (JA-352, 772, 1127-1128). Karlin further wrote "[I]t is Dr. Adler's medical opinion that he should be allowed to remain a student so he could take all parts of the COMLEX 2 in six months." (JA-771-772, 1127-1128). Annexed to Karlin's letter was an August 19, 2013 letter from Adler supporting the request to "allow [Plaintiff] sufficient time to ameliorate the significant life impairment from several disorders.[6]" (JA-100-101, 108, 307-308, 1121-1123).

On or about September 19, 2013, after the Course ended and Plaintiff was no longer an active student, as well as two weeks after Provenzano had informed Plaintiff that he should contact Newman, Plaintiff requested a meeting with Achtziger concerning his request to ODS. (JA-1131-1132). On September 20, 2013, Achtziger informed Plaintiff that he did not qualify for a medical leave, citing NYITCOM's Student Handbook which provides that at the time a student requests a medical leave they must be an active student. (JA-356, 725-726, 1131-1132, 1509). Even if Plaintiff had been an active student at that time, which he was not, he could not have taken another leave as he had already taken a COMLEX 2 Leave during that year. (JA-1509).

---

[6]    Notably, Adler did not recall during his testimony whether Plaintiff had informed him that he had been granted the prior COMLEX 2 Leave and additional time to pass the COMLEX 2 Exams during the Course. (JA-125-128, 1611-1612, 1630). Adler continued to treat Plaintiff after issuance of the August 19, 2013 letter and he testified that he did not recall in February 2014, six months after he wrote the letter, Plaintiff's "status and ability to retake the exam." (JA-132). In addition, Plaintiff never asked Adler after issuance of the letter whether Plaintiff was medically capable of taking the COMLEX 2 Exams. (JA-132-133).

Despite the requirement that scores were to be received before the end of the Course, NYITCOM provided another accommodation to Plaintiff by waiting to receive his exam results before processing his dismissal. (JA-708, 713). Plaintiff ultimately failed the September COMLEX 2 Exams, thereby failing the PE Exam a total of three times and the CE Exam a total of two times. (JA-708, 1560-1561). Plaintiff's score on the September 2013 CE Exam was 262 out of 400, even lower than the score of 280 that he had obtained on the December 2012 CE Exam. (JA-1560-1561, 1666-1669).

### 7. NYITCOM Offers Plaintiff Accommodations

On September 24, 2013 Plaintiff's new attorney, William Goren, Esq. ("Goren"), requested reconsideration of NYITCOM's denial of Plaintiff's accommodation request for a medical leave. (JA-357, 746, 1133-1138). According to Goren, Plaintiff was making a "two-fold" request for an accommodation from NYITCOM. First, Plaintiff was requesting a six-month medical leave. Second, Plaintiff was requesting "enough time to be able to get an accommodation from the NBOME before being dismissed from the school." (JA-195-197). The Goren letter provides:

> [I]t is respectfully submitted that granting my client a medical leave so that he could put himself in the best position to pass the COMLEX tests and get the NBOME [sic] to reconsider their wrongful denial of his reasonable accommodation request is neither an undue burden nor a fundamental alteration to the school's programs and activities.

(JA-1135). Additionally, the Goren letter provides that Plaintiff was requesting "that the COMLEX leave policy be modified so that dismissal from the school, if it ever occurs, will

only occur in the event my client fails the COMLEX exams after being given the accommodations he's entitled to under the ADA." (JA-1137).

Upon receipt of Goren's letter, Jordan Thompson III, Esq. ("Thompson"), then Assistant General Counsel at NYIT, conferred with Catherine Flickinger, Esq., General Counsel at NYIT, Achtziger, Bruno and Wolfgang Gilliar ("Gilliar"), the Dean of NYITCOM, about the letter and NYIT's response. (JA-745-748). It was not typical for NYIT to receive accommodation requests "basically on the doorstep of medical school graduation." (JA-755). Accommodation requests would ordinarily be received throughout a student's tenure at NYITCOM as the student had required accommodations throughout their education. (JA-755-756). Despite the timing of Plaintiff's request, NYITCOM considered how it could further assist Plaintiff with passing the COMLEX 2 Exams in order to graduate. According to Thompson, "[w]e were - - at no point had we really thought about dismissing Mr. Bahl at this point in time… the school, the institution is a not for profit institution. There was no motivation to have him fail here in his endeavor to graduate medical school." (JA-749, 756). NYITCOM made the decision to provide Plaintiff with "an opportunity to extend [the] time to take the NBOME exam and get the accommodations he was seeking from the NBOME." (JA-749, 773-774, JA-1133-1138).

On October 21, 2013, Thompson III wrote to Goren in response to his letter and proposed the following as an accommodation to Plaintiff:

- Effective immediately NYITCOM is placing Mr. Bahl on a "Withdrawal for Financial Aid Purposes Only" status[.]

- NYITCOM agrees to approve Mr. Bahl's application for a retest of the COMLEX Level 2 exams with the National Board of Osteopathic Medical Examiners ("NBOME"), provided that (i) NBOME grants Mr. Bahl a testing accommodation for his alleged learning disability (the "Testing Accommodation"), and (ii) the test date will allow the results to be available by January 31, 2014.
- NYITCOM will not approve Mr. Bahl's application if the NBOME does not grant a Testing Accommodation.
- If Mr. Bahl fails to take and pass the COMLEX Level 2 exam with the Testing Accommodation on or before January 31, 2014, NYITCOM will dismiss Mr. Bahl on that date.

(JA-1666-1669). Thompson noted that NYITCOM was making an exception to its policies for Plaintiff, but that "NYITCOM does not in fact believe that any accommodation is warranted as there is nothing to suggest in [Plaintiff's] impressive academic history, including his tenure at NYITCOM, that he requires an accommodation to succeed based on a purported disability." (JA-1669).

The accommodation offered by NYITCOM to Plaintiff was a modification to its policies. NYITCOM withdrew Plaintiff for financial aid purposes on October 12, 2013. (JA-196, 262-263, 551, 713-714, 747, 1139-1144, 1665). This accommodation allowed Plaintiff to remain eligible to take the COMLEX 2 Exams as he could be reinstated by NYITCOM while on withdrawn status. (JA-623-624, 626, 714-715, 747, 771-772). However, had Plaintiff been dismissed at the end of the Course Plaintiff would not be able to be reinstated. (JA-624, 715). As Thompson testified, "it was certainly an accommodation. The whole circumstance was an accommodation. Mr. Bahl could have been dismissed multiple times prior to my letter

of October 21ˢᵗ. But again, the school's motivation was not to dismiss him. It was to provide

him the time." (JA-769). "[I]t was an accommodation off of our policy." (JA-770).

NYITCOM also provided Plaintiff with additional time to obtain the testing

accommodations from NBOME. This accommodation was based on Goren's request in the

letter that NYITCOM provide Plaintiff with a leave such that Plaintiff will only be dismissed

from NYITCOM if he fails the COMLEX 2 Exams "after being given the accommodations

he's entitled to under the ADA," implying accommodations from NBOME. (JA-749, 773-

774, 1133-1138). NYITCOM chose January 31, 2014 as the deadline to submit passing scores

on the COMLEX 2 Exams as it "thought it was a reasonable time frame for [Plaintiff] to get

the accommodation request that he wanted from NBOME." (JA-753). NYITCOM confirmed

that there were multiple times that Plaintiff could have taken the COMLEX 2 Exams before

January 31, 2014. (JA-765).

NYITCOM believed that they would hear back from Plaintiff shortly after Plaintiff

received the October 21 letter with respect to Plaintiff's attempts to obtain the testing

accommodations that he needed from NBOME. (JA-749). Thompson testified, however, that

it was "radio silence up to January of 2014" from Plaintiff and his attorney. (JA-749-750). On

January 29, 2014 Goren wrote to Thompson and advised that Plaintiff had filed a petition with

the U.S. Department of Education, Office for Civil Rights ("OCR") that day. (JA-202, 205,

1672). Goren requested that NYIT reconsider dismissing Plaintiff from NYITCOM at the end

of the week. (JA-202, 1672).

On January 31, 2014, Thompson responded to Goren's letter. (JA-1673-1674). Thompson wrote:

> Before NYITCOM may reconsider any decision to dismiss your client in accordance with its policy, as already extended, please inform us what attempts Mr. Bahl has taken to obtain a testing accommodation from NBOME and the status of those attempts. Otherwise there is no purpose to even consider further deferring Mr. Bahl's dismissal.

(JA-750-751, 1673-1674). Neither Goren nor Plaintiff responded to Thompson's January 31, 2014 email, including by providing information as to whether Plaintiff received accommodations from NBOME. (JA-715, 751, 754).

On February 20, 2014, Thompson wrote to Plaintiff's new attorney, Kevin Mulhearn, Esq. ("Mulhearn"), the following:

> As Mr. Bahl's other attorney, William Goren, has not responded to our status request of January 31, 2014, I thought this would be a good opportunity to reach out to you and see if you had any additional information regarding his taking of the COMLEX II exams? By way of background, I attach two letters previously sent to Mr. Goren. Please be advised that NYITCOM has not taken any action as to your client's status since the attached letter of October 21, 2013.

(JA-751-754, 1675). Mulhearn responded that he would review this with Plaintiff and get back to Thompson. (JA-1675). Neither Mulhearn nor Plaintiff responded to Thompson's inquiry. (JA-754).

Despite NYITCOM's offer of accommodations to Plaintiff, Plaintiff never reapplied or sought reconsideration of NBOME's denials of his requests for testing accommodations on

the COMLEX 2 Exams. (JA-542-546, 574, 755). Had Plaintiff obtained accommodations from NBOME, he could have been reinstated to NYITCOM to be eligible to take the COMLEX 2 Exams. (JA-741). NYTI's intent was to get Plaintiff to graduate, rather than dismiss him. (JA-741).

Plaintiff claimed at trial that the January 31, 2014 deadline for Plaintiff to pass the COMLEX 2 Exams was "impossible" due to the timing of needing to request and obtain the accommodations, schedule and take the COMLEX 2 Exams and wait for the results. (JA-361-362). However, Plaintiff admitted that Plaintiff never communicated to NYITCOM, directly or through counsel, that he did not have sufficient time to seek reconsideration by NBOME. (JA-556). Rather, Plaintiff instructed Goren to file a complaint with OCR after receipt of Thompson's October 2013 letter. (JA-363). Plaintiff then parted ways with Goren in October 2014 as Plaintiff was "very interested in pursuing litigation…" (JA-229-230, 248).

Of significance is the fact that Plaintiff remains in withdrawn status at NYITCOM, meaning the possibility of reinstatement has not been foreclosed. (JA-713-716, 747). Although it had multiple opportunities to do so, NYITCOM never dismissed Plaintiff from NYITCOM[7]. (JA-546-547, 708, 713-716, 747, 751).

---

[7] Plaintiff testified that he believed that he had been dismissed after NYITCOM denied his accommodation requests. (JA-470-474). Despite this, Plaintiff continued to study for the COMLEX 2 Exams, which is not consistent with someone who believed that he was dismissed. (JA-248-249, 380-382).

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action against NYIT and others on or about June 27, 2014. (SPA-19). In the Complaint, Plaintiff alleged claims of disability discrimination in violation of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. (the "ADA"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. (the "Rehab Act"), and the New York State Human Rights Law ("NYSHRL"), among other claims. *Id*. Thereafter, Plaintiff sought to amend the Complaint to add additional causes of action, as well as to request injunctive relief pursuant to the ADA. (SPA-58). On July 28, 2015, the Honorable Leonard D. Wexler granted Plaintiff's motion to amend the Complaint, in part, but denied Plaintiff's motion to amend the Complaint to add requests for injunctive relief under the ADA as futile and moot (the "July 2015 Order"). (SPA-59-SPA-62, 69).

After the conclusion of discovery, on March 1, 2022 NYIT served upon Plaintiff, then acting *pro se,* a copy of its motion for summary judgment which sought dismissal of Plaintiff's Amended Complaint. (SPA-1-2, 20-21). In opposition to NYIT's motion Plaintiff, then represented by new counsel, withdrew all claims in the Amended Complaint, including his ADA claims, with the exception of Plaintiff's failure to accommodate claims under the Rehab Act and NYSHRL. *Id*. At oral argument, Plaintiff objected to his counsel's withdrawal of these claims. *Id*. On July 2, 2023, the Court denied NYIT's motion for summary judgment with respect to

Plaintiff's failure to accommodate claims under the Rehab Act and NYSHRL, but reserved decision as to the remaining claims. *Bahl v. N.Y. Coll. Of Osteopathic Med.,* 683 F.Supp. 3d 224 (E.D.N.Y. 2023). On February 28, 2024, the Court granted NYIT's motion for summary judgment with respect to Plaintiff's remaining claims as Plaintiff was bound to his former counsel's withdrawal of such claims, including Plaintiff's ADA claims. *Bahl v. N.Y. Coll. Of Osteopathic Med.,* 14-cv-4020-NRM, 2024 WL 866137 (E.D.N.Y. February 28, 2024).

Thereafter, a trial was held in this action commencing on June 10, 2024 before the Honorable Denny Chin ("Judge Chin"). (SPA-2). On June 14, 2024 the jury returned a verdict finding that: (1) Plaintiff was a qualified individual with a disability under the Rehab Act and NYSHRL; and (2) Plaintiff failed to prove that NYIT failed to provide him with a reasonable accommodation in violation of the Rehab Act and NYSHRL. (SPA-22; JA-1768-1770).

Plaintiff moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 or, in the alternative, a new trial pursuant to Fed. R. Civ. P. 59. (SPA-2). On August 20, 2024, Judge Chin issued an Amended Memorandum Decision (the "August 2024 Decision") which denied Plaintiff's motion for judgment as a matter of law or for a new trial in all respects. (SPA-1-48).

On September 13, 2024, Plaintiff filed a Notice of Appeal "from the attached Amended Memorandum Decision entered in this action on August 20, 2024, denying

Plaintiff's post-trial motions pursuant to Rules 50 and 59 in their entirety." (JA-1819).

## SUMMARY OF NYIT'S ARGUMENT

For the reasons set forth in the District Court's August 2024 Decision and herein, NYIT respectfully submits that the Court should affirm the August 2024 Decision which denied Plaintiff's motion for judgment as a matter of law or, in the alternative, motion for a new trial and uphold the jury's verdict in favor of NYIT. Contrary to Plaintiff's assertion, the evidence in the record supports Judge Chin's holding that "the jury had several legally sufficient justifications for finding in favor of NYIT" concerning Plaintiff's claims that NYIT violated the Rehab Act and NYSHRL by failing to accommodate his disabilities. (SPA-28).

Plaintiff's burden to prove that the question of reasonable accommodation should never have been submitted to a jury is high and such a motion is only granted when there is a complete absence of evidence to support the verdict. Judge Chin correctly concluded that a jury could have found by a preponderance of the evidence that NYITCOM offered Plaintiff a plainly reasonable accommodation that allowed Plaintiff to take and pass the COMLEX 2 Exams, which included additional time to take the examinations and withdrawing Plaintiff from NYITCOM, rather than dismissing him. The jury could have also found that Plaintiff's failure to respond to NYITCOM's inquiries concerning his attempts to obtain testing accommodations

from NBOME resulted in a breakdown in the interactive process. Plaintiff's principal argument – that NYITCOM's accommodation was not reasonable because it was unworkable or impossible – is contradicted by the evidence. As of February 20, 2014, six months after Adler wrote his letter supporting Plaintiff's accommodation request, Plaintiff remained on withdrawn status and was, thus, eligible to be reinstated had he obtained the testing accommodations from NBOME that Plaintiff and his attorney, Goren, admitted that he required.

The District Court's denial of Plaintiff's motion for a new trial should also be affirmed. Judge Chin did not err in admitting evidence of Plaintiff's usage of marijuana as a jury could have reasonably concluded that such evidence was relevant to Plaintiff's treatment, was a factor in Plaintiff's difficulties in passing the COMLEX 2 Exams and relevant to Plaintiff's credibility. Judge Chin also properly precluded Plaintiff from introducing the testimony of two former NYITCOM students as the probative value of their testimony concerning their own experiences at NYITCOM and their unrelated claims was "slight and the danger of unfair prejudice…was high." (SPA-39-40). Finally, Judge Chin properly denied Plaintiff's request to show the jury an exhibit that was not responsive to the jury's request.

**THE DISTRICT COURT PROPERLY DENIED PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW AS THERE IS SUFFICIENT EVIDENCE IN THE RECORD TO SUPPORT THE JURY'S VERDICT THAT NYIT DID NOT FAIL TO PROVIDE PLAINTIFF A REASONABLE ACCOMMODATION**

## A.    STANDARD OF REVIEW

This Court reviews a District Court's ruling on a Rule 50 motion for judgment as a matter of law *de novo*. *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)(citing *Valley Juice Ltd. v. Evian Waters of France, Inc*., 87 F.3d 604, 613 (2d Cir.1996)). The Court applies the same standard as the District Court and "must consider the evidence in the light most favorable to the non-moving party," giving the non-moving party "the benefit of all reasonable inferences from the evidence that the jury might have drawn in that party's favor." *Diesel,* 232 F.3d at 103 (citing *LeBlanc–Sternberg v. Fletcher*, 67 F.3d 412, 429 (2d Cir.1995); *Smith v. Lightning Bolt Prods., Inc*., 861 F.2d 363, 367 (2d Cir.1988)).

The Court "cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute [its] judgment for that of the jury." *Id*.; *see also Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970). A motion for judgment as a matter of law may only be granted when there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or ... such an overwhelming amount of evidence in favor of

the movant that reasonable and fair minded [jurors] could not arrive at a verdict against him." *Mattivi v. South African Marine Corp., "Hugueno*t," 618 F.2d 163, 168 (2d Cir.1980)(citing *LeBlanc*, 67 F.3d at 429). In the August 2024 Decision, the District Court correctly noted that "[a]fter a jury has returned a verdict, a movant's burden on a Rule 50 motion is 'particularly heavy,'" and "[t]he Second Circuit has observed that this standard 'is a high one, met only in 'rare occasions.'" (SPA-24-25 (citing *Cross v. N.Y.C. Transit Auth*., 417 F.3d 241, 248 (2d Cir. 2005); *Conte v. Emmons*, 895 F.3d 168, 171 (2d Cir. 2018); *George Basch Co. v. Blue Coral, Inc*., 968 F.2d 1532, 1536 (2d Cir. 1992)).

For the reasons set forth in the District Court's August 2024 Decision and herein, NYIT respectfully submits that this Court should affirm the August 2024 Decision that denied Plaintiff's motion for judgment as a matter of law. Plaintiff has failed to meet his heavy burden to establish that there is a complete absence of evidence to support the jury's verdict sufficient to justify overturning the jury's verdict in favor of NYIT.

### B. THE EVIDENCE IN THE RECORD SUPPORTS THE JURY'S VERDICT THAT NYIT DID NOT FAIL TO PROVIDE PLAINTIFF A REASONABLE ACCOMMODATION

Plaintiff incorrectly argues that the District Court improperly denied Plaintiff's motion for judgment as a matter of law on the ground that the District Court erred in permitting the jury to decide whether NYIT offered Plaintiff a

reasonable accommodation as the record purportedly established that Plaintiff was denied a reasonable accommodation as a matter of law. To the contrary, and as set forth by the District Court, the evidence in the record confirms that "the jury had several legally sufficient justifications for finding in favor of NYIT on this issue" and, such, the verdict should be upheld. (SPA-28).

Both the Rehab Act and the NYSHRL protect individuals with disabilities. *See* 29 U.S.C. § 794(a) (Rehab Act); N.Y. Exec. Law §§ 296(2)(a)(NYSHRL). Under the Rehab Act, "[n]o otherwise qualified individual with a disability [...] shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).  The NYSHRL makes it an unlawful discriminatory practice for a provider of public accommodation, because of a person's disability, to "withhold from or deny to such person any of the accommodations, advantages, facilities, or privileges thereof" by refusing to make reasonable accommodations, unless such provider of public accommodation can demonstrate that making those modifications would "fundamentally alter the nature of such facilities, privileges, advantages or accommodations." N.Y. Exec. Law §§ 296(2)(a)-(b).

To prevail on Plaintiff's failure to accommodate claims under the Rehab Act and the NYSHRL[8] at trial, Plaintiff must prove that he was a qualified person with a disability under the Rehab Act and the ADA. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)(citing *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)). The jury found in favor of Plaintiff on this question and, thus, this is not at issue on appeal. (JA-1768).

Plaintiff then has the burden to prove by a preponderance of the evidence that Plaintiff was denied the opportunity to participate in or benefit from NYIT's services, programs or activities, or was otherwise discriminated against by NYIT, by reason of his disabilities. *See id.* Plaintiff bases his disability discrimination on the theory that NYITCOM failed to provide a reasonable accommodation. *See Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88, 90 (2d Cir. 2011). In the education context, the Rehab Act and the NYSHRL "require a covered institution to offer reasonable accommodations for a student's known disability unless the accommodation would impose an "undue hardship" on the operation of its program. *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 186-187 (2d Cir. 2015).

### 1. NYITCOM Offered Plaintiff a Plainly Reasonable Accommodation

As the District Court correctly noted, the evidence in the record was more than sufficient for a reasonable jury to conclude that NYIT did not violate the Rehab Act or

---

[8] The standards for analyzing failure to accommodate claims under the Rehab Act, the NYSHRL and the ADA are nearly identical and, thus, considered together. *See McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012); *Frilando v. New York City Transit Auth.*, 463 F. Supp. 3d 501, 514 (S.D.N.Y. 2020).

NYSHRL by failing to provide Plaintiff a reasonable accommodation. (SPA-28-30). In order for the jury to find in favor of NYIT, NYIT must establish by a preponderance of the evidence that it offered Plaintiff a "plainly reasonable accommodation." *See Dean*, 804 F.3d at 188-189; *Brief*, 423 Fed. Appx. at 94. "The accommodation need not be "perfect" or the one "most strongly preferred" by the student-plaintiff, but it still must be "effective." *Id.,* at 189 (citing *Noll v. Int'l Bus. Machines Corp.,* 787 F.3d 89, 95 (2d Cir. 2015)). The entity "providing the accommodation has the ultimate discretion to choose between effective accommodations […] and may choose the less expensive accommodation or the accommodation that is easier for it to provide." *Noll*, 787 F.3d at 95 (citing 29 C.F.R. § 1630). "Given the 'fact-specific' nature of the question of whether a measure to accommodate a student's disability is a reasonable accommodation, this determination 'must be made on a case-by-case basis.'" *Dean*, 804 F.3d at 189 (citations omitted).

a.    NYITCOM Granted Plaintiff's Accommodation Request

The evidence in the record confirms that NYITCOM offered Plaintiff a plainly reasonable accommodation that provided Plaintiff with additional time to prepare for and take the COMLEX 2 Exams. As discussed, *supra*, on September 24, 2013, Goren requested reconsideration of NYITCOM's denial of Plaintiff's accommodation request for a six-month medical leave. (JA-357, 746, 1133-1138). According to Goren, Plaintiff was making a "two-fold" request for an accommodation from NYITCOM. First, Plaintiff was requesting a six-month medical leave. Second, Plaintiff was requesting "enough time to be able to get an

accommodation from the NBOME before being dismissed from the school." (JA-195-197, 1135-1137). In fact, Goren's letter clearly states that Plaintiff is seeking a six-month medical leave "so that he could put himself in the best position to pass the COMLEX tests and get the NBOME [sic] to reconsider their wrongful denial of his reasonable accommodation request…" (JA-1135). Additionally, the Goren letter provides that Plaintiff was requesting "that the COMLEX leave policy be modified so that dismissal from the school, if it ever occurs, will only occur in the event my client fails the COMLEX exams after being given the accommodations he's entitled to under the ADA," implying the testing accommodations from NBOME. (JA-1137).

Upon receipt of Goren's letter, NYITCOM conferred about how to further assist Plaintiff with passing the COMLEX 2 Exams in order to graduate. (JA-749, 756). On October 21, 2013, Thompson communicated NYITCOM's decision to provide Plaintiff with "an opportunity to extend [the] time to take the NBOME exam and get the accommodations he was seeking from the NBOME." (JA-749, 773-774, 1139-1143). Significantly, rather than dismiss Plaintiff from NYITCOM with no opportunity for reinstatement, NYITCOM placed Plaintiff on withdrawal for financial aid purposes. (JA-196, 262-263, 551, 713-714, 747, 1139-1143, 1666). This allowed Plaintiff to be eligible for reinstatement in order to be able to take the COMLEX 2 Exams. (JA-623-624, 626, 714-715, 747, 771-772). In addition, NYITCOM offered to approve any application by Plaintiff to retake the COMLEX 2 Exams provided that NBOME granted Plaintiff a testing accommodation and that NYITCOM received the

examination results by January 31, 2014. (JA-1139-1143). According to Thompson, the date was not arbitrary, but rather, was selected because NYITCOM believed it to be reasonable and that Plaintiff would have multiple opportunities to take the COMLEX 2 Exams by that date. (JA-753-765).

Between October 21, 2013 and January 29, 2014, NYITCOM did not hear anything from Plaintiff's counsel other than that Plaintiff had filed an OCR complaint. (JA-202, 205, 749-750, 1672). On January 29, 2014, Goren requested that NYITCOM reconsider dismissing Plaintiff from NYITCOM at the end of the week. *Id*. NYITCOM granted Goren's accommodation request on behalf of Plaintiff. This fact was confirmed by Thompson to Mulhearn on February 20, 2014. In fact, NYITCOM did not dismiss Plaintiff and, to date, has never dismissed Plaintiff from NYITCOM. Plaintiff remains on withdrawn status. (JA-546-547, 708, 713-716, 747, 751).

While Plaintiff claimed at trial that he was solely requesting a six-month medical leave to work on his impairments in order to pass the COMLEX 2 Exams, which he believes that NYITCOM denied, both the testimony of Plaintiff and Goren confirmed that Plaintiff also desired testing accommodations from NBOME. (JA-108, 228-229, 360, 558, 749, 773-774, 1135-1137). Plaintiff testified at his deposition that he needed both a medical leave from NYITCOM and "the testing accommodations that I deserve" in order to pass the COMLEX 2 Exams. (JA-558). Goren also believed that Plaintiff's intent was to ask NBOME for testing accommodations in addition to a leave from NYITCOM. (JA-228-229). A jury could have

reasonably concluded that NYITCOM's accommodation that allowed Plaintiff to both obtain

reconsideration of the testing accommodations from NBOME that he desired and prepare for

and take the COMLEX 2 Exams was a plainly reasonable accommodation for the

accommodation was what Plaintiff was seeking.

Significantly, the record also confirms that NYITCOM granted Plaintiff a six-month

leave. Adler's letter in support of Plaintiff's request is dated August 19, 2023. On February 20,

2014, six months later, Thompson notified Mulhearn that Plaintiff remained on withdrawn

status and was not dismissed.

> b.  <u>The District Court Correctly Held That The Question of Reasonable
> Accommodation Was Properly Before the Jury</u>

The District Court correctly held that the question of whether NYIT reasonably

accommodated Plaintiff was properly before the jury. The District Court opined: "In deciding

whether NYIT had failed to provide Bahl with a reasonable accommodation, the jury could

have reasonably considered not just the offer that NYIT made in Thompson's letter of October

21, 2013, DX HHH, but the entire series of accommodations it gave to Bahl." (SPA-28).

According to the District Court, this included:

> (1) in July 2011, following Bahl's difficulties at Plainview
> Hospital, NYIT permitted him to take a medical withdrawal
> instead of subjecting him to disciplinary proceedings; (2) in
> December 2012, NYIT permitted him to take a COMLEX 2
> leave of absence from January 1 through June 30, 2013; (3) in
> June 2013, following the completion of the COMLEX 2 leave,
> NYIT permitted him to take a ten-week Directed Study Course;
> (4) in July 2013, NYIT permitted him to take a third Capstone;

and (5) in October 2013, NYIT permitted Bahl to take a financial withdrawal, which gave him the ability to apply for reinstatement. At any of these steps, NYIT could have dismissed him but it did not do so.

(SPA-28-29). The District Court further noted that: "*In context,* the jury could have found that the additional offer of yet another three months, even with the condition of accommodations from NBOME, was reasonable." (SPA-29)(emphasis added).

Plaintiff argues that the District Court's reasoning cannot sustain the jury's verdict in favor of NYIT as the fact that NYITCOM may have previously accommodated Plaintiff did not excuse NYITCOM's obligation to provide a plainly reasonable accommodation to Plaintiff in October 2013. The District Court did not take this position. Rather, as the determination of the provision of a reasonable accommodation is a fact-intensive inquiry and conducted on a case-by-case basis, the District Court acknowledged that a jury could have concluded that NYITCOM's October 2013 offer of additional time to take the COMLEX 2 Exams until January 31, 2014 was reasonable "in context" with the prior efforts to accommodate Plaintiff, including the many months of additional time that Plaintiff had to prepare for the COMLEX 2 Exams.

Plaintiff's reliance on *Dean* and the District Court's decision denying NYIT's motion for summary judgment on this issue is misplaced. 804 F.3d at 182-189; *Bahl*, 683 F.Supp. 3d 224. In both decisions, the courts were determining whether the defendant had established as a matter of law that the accommodations offered were reasonable. *Id*. The courts denied summary judgment as a reasonable jury could find in favor of the plaintiffs. *Id*. Although the

District Court in *Bahl* cited *Dean* in opining that NYITCOM "had a legal obligation to consider each accommodation and leave request on the merits," neither decision stands for the proposition that the jury cannot consider a school's prior efforts to accommodate when deciding whether the accommodation at issue is reasonable. *Id.* at 234. Here, after a trial and weighing the evidence, the jury properly found in favor of NYIT that it provided a reasonable accommodation to Plaintiff.

Moreover, the District Court properly held that "the jury could have found that NYIT acted reasonably in insisting that Bahl obtain accommodations from NBOME." (SPA-029). There was no basis to conclude with any certainty that Plaintiff's alleged proposal of a six-month medical leave would be successful. By the time Plaintiff requested this accommodation, he had been treated by Adler since March 2011, Yellin since August 2011 and Fazzari since January 2012, yet could not pass the COMLEX 2 Exams by September 2013, two years later. There is no evidence in the record that any of Plaintiff's treatment providers could guarantee that six additional months of treatment would have permitted Plaintiff's condition to improve sufficiently that he would be able to pass the COMLEX 2 Exams to satisfy his degree requirements. In fact, Adler never opined as to whether Plaintiff was even capable of taking the COMLEX 2 Exam after he issued the August 2013 letter.

As noted by the District Court, "it was apparent from the ongoing failures and cancellations that there was a serious issue. Indeed, NYIT saw that Bahl's CE score actually dropped from 280 in December 2012 to 262 in September 2013, with both scores far below

the passing grade of 400. NYIT could see that the additional time for continued medical treatment did not help." (SPA-29-30). The District Court correctly opined that:

> The jury could have determined that, by October 2013, NYIT's belief that Bahl would not be able to pass without testing accommodations from NBOME was eminently reasonable. The jury could have further determined that, because continued medical treatment was not the answer, Bahl could have obtained accommodations from NBOME and taken the COMLEX 2 within three months.

(SPA-30).

Moreover, any argument that the jury charge that characterized NYITCOM's response as an accommodation was improper fails as Plaintiff's counsel did not object to that aspect of the charge and Thompson's October 21, 2013 letter offered an accommodation. (SPA-33-34)

c.    NYITCOM's Accommodation Was Not "Unworkable"

To support his position that the District Court erred in denying his motion for judgment as a matter of law, Plaintiff argues that NYITCOM's accommodation was "unworkable." Plaintiff contends that the January 31, 2014 deadline did not provide Plaintiff with sufficient time to seek reconsideration of his testing accommodations from NBOME and, if granted, take and receive scores on the COMLEX 2 Exams. In addition, Plaintiff argues that he had already taken the PE Exam three times within the calendar year, with his first PE Exam being taken on December 26, 2012. As Plaintiff contends that he could not take another PE Exam until December 26, 2013, he argues that it was unlikely that his scores would be released by the deadline. Although Plaintiff points to certain general timelines in the NBOME's rules,

when NBOME would respond to Plaintiff's accommodation request and how long it took to obtain testing scores is speculative.

Plaintiff raised this argument at trial and the jury ultimately dismissed it, likely because the record evidence confirms that the "unworkable" issue is moot. NYITCOM never dismissed Plaintiff and, thus, Plaintiff had sufficient time to obtain accommodations, take the COMLEX 2 Exams and obtain the results subsequent to January 31, 2014. In addition, there is no evidence in the record that NYITCOM somehow "knew that NBOME would not have granted Plaintiff's request for a testing accommodation" and, thus, did not make its proposal in good faith. (Pl. Brief, p. 25). Such an assertion is based on pure speculation.

What Plaintiff cannot overcome is that he did not even try to obtain accommodations from NBOME, despite believing that he needed such accommodations to pass the COMLEX 2 Exams. (JA-542-546, 558, 574, 755, 1135-1137). Plaintiff also admitted that Plaintiff never communicated to NYITCOM, directly or through counsel, that he allegedly did not have sufficient time to seek reconsideration by NBOME and/or take and receive results of the COMLEX 2 Exams by January 31, 2014. (JA-556). Rather, Plaintiff commenced legal proceedings. (JA-363).

## 2. The Jury Could Have Reasonably Found That Plaintiff Was Responsible for the Breakdown in the Interactive Process Concerning Plaintiff's Accommodation Request

The District Court properly held that the jury could have reasonably found that Plaintiff was responsible for the breakdown in the interactive process concerning Plaintiff's

accommodation request. (SPA-30-32). The Rehab Act and the NYSHRL "envision[] an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan v. N.Y.S. Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000). "The purpose of the interactive process is to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Sivio v. Village Care Max*, 426 F.Supp.3d 778, 794 (S.D.N.Y. 2020)(quoting *Noel v. BNY-Mellon Corp*., 2011 WL 4633884, at *2 (S.D.N.Y. October 4, 2011), *aff'd*, 514 F. App'x 9 (2d Cir. 2013), and 29 C.F.R. § 1630.2(o)(3)).

When evaluating a failure to accommodate claim where the interactive process does not result in an accommodation, "courts should attempt to isolate the cause of the breakdown [of the interactive process] and then assign responsibility." *Zito v. Donahoe*, 915 F. Supp. 2d 440, 446 (S.D.N.Y. 2012) (citations omitted). A covered entity "who engages in an interactive process […] will not be subject to liability under [the Acts] for failure to accommodate, unless the [covered entity] is responsible for a breakdown in the interactive process." *Tafolla v. Cty. of Suffolk*, No. 17-cv-4897(JS)(AKT), 2021 WL 3675042, at *5 (E.D.N.Y. Aug. 19, 2021). Similarly, "[a] [plaintiff] who is responsible for the breakdown of that interactive process may not recover for a failure to accommodate." *Nugent v. St. Lukes Roosevelt Hosp Ctr.*, 303 Fed. Appx. 943, 946 (2d Cir. 2008); *accord Parker v. Sony Pictures Ent., Inc*., 260 F.3d 100, 114 (2d Cir. 2001).

The evidence in the record confirms that Thompson wrote to Goren on October 21, 2013 and offered NYITCOM's accommodation to Plaintiff which consisted of withdrawing Plaintiff from NYITCOM so that he could be reinstated, instead of dismissing him. (JA-1139-1141). NYITCOM also agreed to approve Plaintiff's application for a retest of the COMLEX 2 Exams provided that NBOME granted Plaintiff a testing accommodation and the test results would be available by January 31, 2014. Thereafter, it was "radio silence" from Plaintiff and his counsel. NYITCOM did not hear from Plaintiff's counsel until January 29, 2014, when Goren advised Thompson that Plaintiff had filed a petition with OCR. (JA-1672). On January 31, 2014, Thompson asked Goren about Plaintiff's attempts to obtain testing accommodations from NBOME. (JA-1673). Again, radio silence from Plaintiff. On February 20, 2014, Thompson, once again, attempted to find out the status of Plaintiff's attempts to obtain a testing accommodation from NBOME. Plaintiff did not respond to Thompson's inquiry.[9] A jury could have reasonably concluded that the reason for the "radio silence" was because Plaintiff admittedly never attempted to obtain testing accommodations from NBOME. Despite the lack of communication from Plaintiff, NYITCOM continued Plaintiff on withdrawn status so he would remain eligible for reinstatement to take the COMLEX 2 Exams, rather than dismiss

---

[9] NYIT contends that it made additional efforts to continue the interactive process post-litigation, which Plaintiff failed to respond to, but the District Court ruled in favor of Plaintiff and denied NYIT's request to introduce such evidence at trial. That evidence, most respectfully, is additionally destructive of Plaintiff's claim. (JA-78-80).

him. As Thompson testified, "the school's motivation was not to dismiss him. It was to provide him the time." (JA-769). Significantly, NYITCOM had no control over Plaintiff's efforts (or lack thereof) in passing the COMLEX 2 Exams. In short, there was absolutely nothing else that NYITCOM could offer Plaintiff to allow him to pass the examinations and graduate on or after September 2013.

On appeal, Plaintiff fails to point to any evidence in the record to suggest that Plaintiff and his counsel did, in fact, respond to Thompson's inquiries and provide information concerning Plaintiff's efforts to obtain testing accommodations from NBOME. Plaintiff also conceded that he never informed NYITCOM of his belief that he would not be able to pass the COMLEX 2 Exam by the initial January 31, 2014 date to continue the interactive process. Instead, Plaintiff continues to argue that NYITCOM's proposed accommodation was "unworkable," which, thus, purposefully excused Plaintiff from his obligations to engage in the interactive process. To support this proposition, Plaintiff argues that Thompson never modified NYITCOM's proposal. The record contradicts this position. The October 2013 letter indicated that Plaintiff had until January 31, 2014 to pass or he would be dismissed. On January 31 and February 20, 2014, Thompson advised Plaintiff's counsel that NYITCOM had not dismissed Plaintiff. Plaintiff remains on withdrawn status. Thus, a jury could reasonably conclude that NYITCOM made significant modifications to its October 2013 proposal as part of the interactive process, by extending the time by which Plaintiff could take the COMLEX

2 Exams. As discussed, *supra*, this defeats any argument that NYITCOM's proposed accommodation was unworkable.

It is clear from the record that communications between Plaintiff and NYITCOM broke down when Plaintiff refused to consider NYITCOM's proposed accommodations, stopped communicating with NYITCOM and, instead, filed a petition with OCR. *See Gati v. Western Kentucky University,* 762 Fed.Appx. 246, 252 (6th Cir. 2019). Thus, a reasonable jury could have found that Plaintiff was responsible for the breakdown in the interactive process and find in favor of NYIT. *See, e.g., Delson v. Mineta*, 144 Fed. Appx. 136, 137 (2d Cir. 2005) (citation omitted); *Nugent*, 303 Fed. Appx. at 946.

### 3.    Plaintiff's Proposed Accommodation Was Unreasonable

Notably, while schools must offer "reasonable accommodations to ensure meaningful access," the Acts do "not require that substantial changes be made to the program itself." *Brief*, 423 Fed. Appx. at 90-91.  Instead, "in the education context, a plaintiff alleging a failure to accommodate a disability bears the burdens of both production and persuasion as to the existence of *some accommodation* that would allow the plaintiff to meet the essential requirements of the service, program, or activity at issue." 804 F.3d 178 at 190 (*emphasis added*).

a.    Plaintiff's Proposed Accommodation Was Not Reasonable

Plaintiff's proposed accommodation was not reasonable as the record confirms that there was no accommodation that NYITCOM could have provided that on its own would

have allowed Plaintiff to pass the COMLEX 2 Exams. Again, while Plaintiff contends that he needed a medical leave from NYITCOM, Plaintiff and Goren also admitted that he required an accommodation from NBOME. Thus, Plaintiff's request to NYITCOM was not, without some concession from NBOME, sufficient to permit Plaintiff to meet his degree requirements. *See Pahlavan v. Drexel Univ. Coll. of Med.*, 438 F. Supp. 3d 404, 422 (E.D. Pa. 2020); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 466 (4th Cir. 2012); *McGregor v. Louisiana State Univ. Bd. of Sup'rs*, 3 F.3d 850, 862 (5th Cir. 1993).

        b.    <u>The Jury Could Have Reasonably Concluded That Plaintiff's Requested Accommodation Could Have Required a Fundamental or Substantial Modification to the Nature of NYITCOM's Academic Program or Standards</u>

Assuming *arguendo* that the jury could not have reasonably concluded that NYITCOM's proposed accommodation was plainly reasonable, which NYIT denies, a jury could have still reasonably concluded that Plaintiff's proposed accommodation was unreasonable. *See Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 75-76 (2d Cir. 2016); *Dean*, 804 F.3d at 190. Under the Rehab Act and NYSHRL, NYIT can establish that Plaintiff's proposed accommodation is unreasonable where it would "(a) impose undue hardship on the operation of the defendant's service, program, or activity, or (b) require a fundamental or substantial modification to the nature of its academic program or standards." *Dean*, 804 F.3d at 190; *see also Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 413 (1979).

Contrary to Plaintiff's assertion on appeal, the record confirms that Plaintiff's alleged proposed accommodation for a six-month medical leave followed by the ability to take and

pass the COMLEX 2 Exams, despite being contrary to Goren's September 2013 request which advised that Plaintiff also sought an accommodation from NBOME, discussed *supra*, would require a fundamental and substantial modification to the nature of NYITCOM's academic program. The DO degree program anticipates students completing the program and its requirements in four years. Pursuant to COCA, students are required to pass the COMLEX 1 and 2 Exams in order to graduate. At the time that Plaintiff went on his COMLEX 2 Leave, he was already one semester behind his class due to his medical withdrawal in 2011. He then requested and was placed on a 180-day COMLEX 2 Leave and the 10-week Course, for over 8 months of leave to study for the COMLEX 2 Exams. Plaintiff's request for an additional 6 months to "ameliorate" the deficits from his disabilities and then time to take and pass the COMLEX 2 Exams, would provide Plaintiff with over 14 months additional time to pass the COMLEX 2 Exams, which are expected to be passed by graduation. This proposal represents a "substantial modification" of NYITCOM's existing standards and thus is *per se* unreasonable. In any event, this Court need not conclude this issue, as the uncontested evidence is that Plaintiff continued to be able to graduate from NYITCOM after January 31, 2014, as he had never been dismissed. Indeed, it is, and was, his own failure to pass the COMLEX 2 Exams either before, or after, January 31, 2014 that has prevented him from graduating.

## POINT II

## PLAINTIFF IS NOT ENTITLED TO A NEW TRIAL AS THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ITS EVIDENTIARY AND OTHER RULINGS AS AGAINST PLAINTIFF

### A.    STANDARD OF REVIEW

The Court reviews a District Court's ruling on a Rule 59 motion for a new trial for abuse of discretion. *Qorrolli v. Metro. Dental Associates*, 124 F.4th 115, 125 (2d Cir. 2024) "It is a deferential standard, which reflects district courts' significant—although not limitless—latitude to exercise their inherent discretionary authority." *Ali v. Kipp*, 891 F.3d 59, 64 (2d Cir. 2018). The Court views the evidence "in the light most favorable to the nonmoving party" and will reverse a judgment "only if the district court (1) based its decision on an error of law, (2) made a clearly erroneous factual finding, or (3) otherwise rendered a decision that cannot be located within the range of permissible decisions." *Ali*, 891 F.3d at 64.

On a motion for a new trial the District Court is free to weigh the evidence and the credibility of witnesses and "need not view the evidence in the light most favorable to the verdict winner." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012)(citing *United States v. Landau*, 155 F.3d 93, 104 (2d Cir.1998)). A motion for a new trial should only be granted if the District Court determines the jury has reached a "seriously erroneous result" or "the verdict is a miscarriage of

justice." *Qorrolli,* 124 F.4th at 125 (citing *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 314 (2d Cir. 1999)); *Atkins v. New York City*, 143 F.3d 100,102 (2d Cir. 1998)); *see also Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417-18 (2d Cir. 2012).

For the reasons set forth in the August 2024 Decision and herein, NYIT respectfully submits that the Court should affirm the District Court's August 2024 Decision denying Plaintiff's request for a new trial as the District Court did not abuse its discretion in holding "[t]here was no miscarriage of justice here" and that "the jury clearly got it right." (SPA-47).

## B. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ADMITTING EVIDENCE OF PLAINTIFF'S MARIJUANA USE

Plaintiff argues that the District Court abused its discretion by admitting evidence of Plaintiff's marijuana use. Plaintiff felt that references to his marijuana usage painted "a misleading picture" that he was a drug abuser and suggested "he was not serious about obtaining his medical degree." (Pl. Brief, p.42). Plaintiff claims that his marijuana usage "had no bearing on whether Defendant offered him a reasonable accommodation," and "it was clear that marijuana had nothing to do with his inability to pass the exam," while providing no evidence to support such conclusory assertions. *Id*. at 43. Plaintiff further asserts that "the unfair prejudice to Plaintiff significantly outweighed its probative value." *Id*. at 42.

FRE 404(b) "bars the admission of evidence of past 'bad acts' to show that the actor acted in conformity therewith in the present instance, 'but allows the introduction of such evidence for other purposes.'" *Fletcher v. City of New York*, 54 F.Supp.2d 328, 333 (S.D.N.Y.,1999)(quoting *Lewis v. District of Columbia*, 793 F.2d 361, 363 (D.C.Cir.1986)). Although the evidence of marijuana usage was offered in a different context than here, the *Fletcher* case is analogous. In *Fletcher*, the Court found evidence of the plaintiff's history of drug use was admissible under 404(b) as such use could have been a proximate cause of the plaintiff's damages and, thus, relevant. 54 F.Supp.2d at 334. Additionally, when addressing FRE 403 and whether the prejudicial effect of such evidence outweighed its probative value, the *Fletcher* court declared "the trial judge has 'large discretion' in this weighing process." *Fletcher* at 334, quoting *Lewis* at 363. The Court found the probative value of Fletcher's past drug use outweighed the danger of unfair prejudice and was "admissible for the (limited) purpose" of calculating damages. *Fletcher* at 334.

Here, as in *Fletcher*, the evidence of Plaintiff's marijuana use was admitted as relevant to an issue other than Plaintiff's character. The District Court concluded that Plaintiff's marijuana use was "relevant to his treatment," particularly where two physicians testified that his usage could have an impact on the treatment of Plaintiff's disability (SPA-41). The District Court noted Yellin's testimony that knowledge that Plaintiff was smoking marijuana three times a week "would make [him] question

whether or not [Plaintiff] had ADHD as opposed to sequela of smoking a lot of pot." (SPA-41; JA-164-165). The District Court also noted Adler's testimony that more than intermittent usage of marijuana could impact treatment. (SPA-41; JA-121-122).

Further, the District Court properly concluded that the jury "could have reasonably concluded that Plaintiff's marijuana usage and drinking were a factor in his difficulties in medical school generally and in passing the COMLEX 2 in particular," and knowledge of such facts could have "appropriately" influenced the jury's evaluation of the reasonableness of NYIT's response, "including whether Bahl had a realistic chance of passing the COMLEX 2 without accommodations from NBOME." (SPA-42).

Finally, the District Court properly concluded that evidence of Plaintiff's marijuana use was relevant to his credibility, as he was "extremely evasive" about his marijuana usage at trial, was not honest with Adler when he told him "his marijuana use was 'not sustained and not regular,'" and contradicted himself when he testified that his doctors told him his marijuana use was not a problem, although Plaintiff himself acknowledged that it was not "advisable" for someone with ADHD. (SPA-42; JA-121-122, 445-446, 449-450, 460-462, 465, 505-506, 1482-1483, 1721).

The District Court, thus, exercised its broad discretion in weighing the probative value of Plaintiff's marijuana usage and its prejudicial effect, found "the

risk of unfair prejudice was low," and rightly determined that it was relevant to several issues at trial and was therefore admissible. (SPA-43). As such, Plaintiff's request for a new trial should be denied.

### C. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN PRECLUDING TWO FORMER NYITCOM STUDENTS FROM TESTIFYING CONCERNING THEIR EXPERIENCES AT NYITCOM

Plaintiff also argues that the District Court abused its discretion in precluding the testimony of two witnesses, John Purcell ("Purcell") and Todd Regnier ("Regnier"), both former students whom Plaintiff claims "experienced similar adverse responses" from NYIT regarding their disabilities. (Pl. Brief pp. 47-48). Plaintiff claims "other-employee evidence may be admissible to show the employer's state of mind or attitude towards members of a protected class," (*Id*. at 47, citing *Becker v. ARCO Chem. Co*, 207 F.3d 176, 194 n.8 (3d Cir. 2000)), and "'an employer's ongoing or discriminatory conduct is relevant to proving a particular instance of discrimination.'" *Id*. at 47, quoting *Estes v. Dick Smith Ford, Inc*., 856 F.2d 1097, 1102 (8th Cir. 1988). Plaintiff further argues that whether NYIT harbored discriminatory intent because of his protected class was at issue in his case, and the probative value of the witnesses' testimony "significantly outweighed any prejudice" to NYIT. *Id*. at 50.

Contrary to Plaintiff's arguments, this Court has held that there is no intent requirement with respect to liability for failure-to-accommodate claims, and Plaintiff thus has no burden to prove NYIT acted with discriminatory intent or was motivated by any particular mindset. *See Brooklyn Ctr. For Psychotherapy, Inc. v. Phila. Indem. Ins*., 955 F.3d 305, 312 (2d Cir. 2020). Further, other Courts have held "whether [an employer] has generally accommodated or failed to accommodate any other employees is of no consequence…ADA claims must be judged on an individual basis, not on an employer's past practices." *Taylor v. Gilbert & Bennett*, 1997 WL 30948, at *2 (N.D.Ill.1997). Evidence relating to an employer's past practices of failing to accommodate would only be relevant where the employees are "similarly situated" to a plaintiff to determine if accommodation was or could have been reasonably made to the present plaintiff. *Id*. at *2.

Here, both Reigner and Purcell were expected to testify regarding their own, separate experiences as students at NYITCOM and their claims that NYIT discriminated against them, wholly dissimilar to Plaintiff's claims. Purcell brought suit against NYIT in 2016, asserting various claims for relief arising out of his dismissal from NYITCOM. (JA-921-923). Notably, Purcell, unlike Plaintiff, did not bring any claims that NYIT failed to accommodate a disability arising out of his failure of the COMLEX examinations. (JA-921-923). Regnier was also terminated

from NYIT for his failure to satisfactorily comply with certain program requirements unrelated to the passage of the COMLEX examinations. (JA-921-923).

Accordingly, the District Court did not abuse its discretion by ruling that Plaintiff was prohibited from calling Purcell and Reigner as witnesses. In the August 2024 Decision, the District Court properly concluded that its decision on this issue did not warrant a new trial:

> While I acknowledged that in some circumstances, evidence of discrimination against others may be admissible to support a claim against a plaintiff, see Tr. At 127, 177, I concluded that such evidence should not be admitted here. This was not a class action nor was it a pattern and practice or a hostile environment case; a reasonable accommodation case is different from a race or gender discrimination case; the reasonable accommodation inquiry is a fact-intensive one that is likely to turn on the particular circumstances of a plaintiff's request; and whether others got or did not get an accommodation in their specific circumstances would be of little relevance here. The facts of Purcell's and Regnier's situations were very different, and both had resolved their claims. Accordingly, I concluded that the probative value of their testimony was slight and the danger of unfair prejudice and unnecessary delay was high.

(SPA-39-40).

Plaintiff essentially argues that Purcell's and Regnier's experiences at NYITCOM are relevant to Plaintiff's claims to establish an inference that NYIT had a propensity for engaging in wrongful conduct, and that in failing to provide Plaintiff an accommodation, NYIT acted in conformity with that propensity. This is classic

bad acts evidence offered to show actions in conformity therewith and, as such, it is entirely inadmissible under FRE 404(b); *see also Becker*, 207 F.3d at 191.

Appropriately, the District Court ruled that the probative value of Purcell's and Regnier's testimony was "slight," and "the danger of unfair prejudice and unnecessary delay was high." (SPA-40). Purcell and Regnier's claims were not similar to Plaintiff's claims, and resulted from entirely different circumstances. Plaintiff's claim that the testimony was relevant to establish NYIT's discriminatory intent fails, as there is no intent requirement for failure-to-accommodate claims. *See Brooklyn Ctr. For Psychotherapy* at 312. The testimony of Purcell and Regnier was further inadmissible under FRE 404(b). As the District Court correctly excluded the testimony, the August 2024 Decision should not be disturbed on this issue.

## D. THE DISTRICT COURT DID NOT IMPROPERLY DENY THE JURY AN OPPORTUNITY TO REVIEW NON-RESPONSIVE EVIDENCE DURING ITS DELIBERATIONS

The District Court also did not err in denying Plaintiff's request to submit a non-responsive exhibit to the jury during deliberations and, as such, a new trial is not warranted. During jury deliberations, the foreperson sent a note to Judge Chin making the following request:

> After the school's terms of accommodation email (2/20/2014 from Mr. Thompson) to Plaintiff's attorneys, is there any formal evidence on the record of a reply from the Plaintiff or his attorneys? If so, can we see it?

(JA-1763). The jury also requested to see four exhibits: (1) Goren's September 24, 2013 letter to NYITCOM requesting reconsideration of NYITCOM's alleged denial of Plaintiff's accommodation request; (2) Thompson's October 21, 2013 letter to Goren in response containing NYITCOM's offer of an accommodation; (3) Thompson's January 31, 2014 letter to Goren inquiring as to the status of Plaintiff's attempts to obtain a testing accommodation from NBOME; and (4) Thompson's email exchange with Mulhearn on February 20, 2014 requesting information concerning Plaintiff's taking of the COMLEX 2 Exams. (JA-1763, 1666-1669, 1673-1675).

Plaintiff's counsel sought to introduce Plaintiff's Exhibit 56, which included a March 28, 2014 letter from OCR advising the President of NYIT that a complaint had been filed against NYIT on January 29, 2014 and a number of other documents, including NYIT's response to OCR. (JA-899-900, 1283-1403). None of the documents in Plaintiff's Exhibit 56 contain communications from Plaintiff or Plaintiff's counsel to NYIT or OCR after February 20, 2014. (JA-1283-1403).

This Court "review[s] a district court's response to a jury question during deliberations for abuse of discretion, considering (1) whether the instructions as a whole fairly and adequately treat the issues; (2) whether the supplemental instruction is a correct statement of the law; and (3) whether the district court answered the jury's questions specifically." *Lindsay v. Macias*, 907 F.3d 517, 521-522 (2d Cir.

2018)(citations omitted). Here, the District Court properly denied Plaintiff's request to submit the OCR file as it was non-responsive to the jury's request for "a reply from the Plaintiff or his attorneys to Thompson's February 20, 2014 email." (JA-899-900). In fact, Plaintiff's counsel conceded there are no other documents in the record that constitute a "reply" to Thompson's email. (JA-900).

Only after the District Court denied Plaintiff's request to show the jury Plaintiff's Exhibit 56 did Plaintiff's counsel ask for time to further review the documents contained within Plaintiff's Exhibit 56. (JA-900-903). What Plaintiff omits is that Plaintiff's counsel already had time to review the jury's request and the record to see if there were responsive documents prior to going on the record. (JA-897-903). Even if the Court erred in not providing Plaintiff's counsel with this additional time, such error was harmless as a review of Plaintiff's Exhibit 56 confirms that there is no document from Plaintiff or his attorneys written after February 20, 2014 that could possibly be responsive to the jury's request. (JA-1283-1403, 1763).

Thus, Judge Chin properly responded to the jury's question: "As for your question whether there is any formal evidence in the record of a reply from the plaintiff or his attorneys to the 2/20/2014 email from Mr. Thompson, the answer is no." (JA-1764). As the District Court was absolutely factually correct, it could not,

and did not, abuse its discretion in denying Plaintiff's request to provide Plaintiff's Exhibit 56 to the jury.

## POINT III

### PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF

On appeal, Plaintiff argues that he requires injunctive relief from NYIT in order to take and pass the CE Exam and graduate from NYITCOM. Specifically, Plaintiff contends that "NYIT must attest to a graduate having demonstrated the fundamental osteopathic clinical skills necessary for graduation" in order for Plaintiff to be able to register for and schedule the CE Exam. (Pl. Brief, pp. 38-39). As equitable relief is a form of damages, the Court may only consider this argument should it conclude as a matter of law that NYIT failed to provide Plaintiff with a reasonable accommodation or determine that a new trial is warranted.

To support his position, Plaintiff argues that Judge Wexler in the July 2015 Order improperly denied Plaintiff's motion to amend the Complaint to add a request for injunctive relief pursuant to the ADA. (SPA-058-62, 69; Pl. Brief, p. 38). Plaintiff, however, has not appealed from the July 2015 Order. The Notice of Appeal is of the August 2024 Decision, which denied Plaintiff's post-trial motions. (JA-1819).

"A notice of appeal must 'designate the judgment, order, or part thereof being appealed.'" *Elliott v. City of Hartford*, 823 F.3d 170, 172 (2d Cir. 2016)(citing Fed.

R. Appl. P. 3(c)(1)(B)). This is a jurisdictional requirement. *See Malek v. Feigenbaum*, 116 F.4th 118, 128 (2d Cir. 2024). The Court's "task…is to interpret the notice of appeal so as to remain faithful to the intent of the appellant, fair to the appellee, and consistent with the jurisdictional authority of this court." *Elliott,* 823 F.3d at 172 (quoting *Conway v. Village of Mount Kisco*, 750 F.2d. 205, 211 (2d Cir. 1984)). Plaintiff's Notice of Appeal cannot be construed to include an appeal of the July 2015 Order "because it does not demonstrate an intent to appeal that order." *Malek*, 116 F.4th at 128. The Notice of Appeal is clear that Plaintiff is appealing from the August 2024 Decision. (JA-1819). There is nothing within the Notice of Appeal that indicates that Plaintiff's intent is to appeal from prior orders, including the July 2015 Order. Thus, NYIT respectfully submits that Plaintiff's request to reverse Judge Wexler's denial of his request to seek injunctive relief under the ADA should be denied as the Court is without jurisdiction to consider this issue on appeal. *See New Phone Co., Inc. v. City of New York*, 498 F.3d 127, 130-131 (2d Cir. 2007).

Should the Court determine that it does have jurisdiction to consider this issue on appeal, Plaintiff's request for injunctive relief should also be denied as it is predicated on Plaintiff's belief that Judge Wexler issued an incorrect decision with respect to Plaintiff's proposed amendment to add injunctive relief in connection with Plaintiff's ADA claims. (Pl. Brief., p. 38). Such an argument is moot as Plaintiff's

ADA claims were dismissed on summary judgment. (SPA-2, 20-21). Plaintiff cannot seek a remedy arising out of a statute that is no longer in the case.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the District Court's August 2024 Decision denying Plaintiff's motions for judgment as a matter of law or for a new trial should be affirmed in its entirety and the jury's verdict in favor of NYIT should be upheld.

Date:  March 24, 2025

Respectfully submitted,
CLIFTON BUDD & DEMARIA, LLP
*Attorneys for Defendant-Appellee*
*New York Institute of Technology*

By:  *Douglas P Catalano*
Douglas P. Catalano
Stefanie R. Toren
350 Fifth Avenue, 61st Floor
New York, New York 10118
Phone: (212) 687-7410
Facsimile: (212) 687-3285
dpcatalano@cbdm.com
srtoren@cbdm.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(5) of the Federal Rules of Appellate Procedure, the foregoing brief is in <u>14-Point Times New Roman</u> proportional font and contains 13,999 words and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

Dated: March 24, 2025
     New York, New York

_____
Stefanie R. Toren
Clifton, Budd & DeMaria, LLP
350 Fifth Avenue, 61st Floor
New York, New York 10118
Phone: (212) 687 7410
Facsimile: (212) 687 3285
srtoren@cbdm.com